UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KRISTINA MIERNIK,

    Plaintiff,

v.

    Case No. 8:22-cv-01395-TPB-AAS

W.S. BADCOCK CORPORATION,

    Defendant.
_____/

**DEFENDANT, W.S. BADCOCK CORPORATION'S MOTION
TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION
COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

Defendant, W.S. Badcock Corporation ("Badcock"), by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure 12(b)(1), moves to dismiss the First Amended Class Action Complaint (Dkt. 16) filed by Plaintiff, Kristina Miernik ("Plaintiff") for lack of Article III standing, and in support states as follows:

**INTRODUCTION**

In her First Amended Class Action Complaint (Dkt. 16) ("Amended Complaint"), Plaintiff seeks to certify a class under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") based on allegations that she received multiple "unwanted prerecorded voice calls" to her cellular telephone without having given her express consent for same. Dkt. 16, ¶¶ 14, 21, 28-29, 33. In order

1

to maintain her TCPA claim, Plaintiff must have Article III standing.[1]  The requirements for Article III standing are that Plaintiff: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016); *Hallums v. Infinity Ins. Co.*, 945 F.3d 1144, 1147 (11th Cir. 2019).  To establish the first requirement—an injury in fact—Plaintiff must show that she "suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Hallums*, 945 F.3d at 1147 (quoting *Spokeo*, 136 S.Ct. at 1548) (quotation marks omitted).

Two years after *Spokeo*, the United States Supreme Court issued its opinion in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 210 L. Ed. 2d 568 (2021) discussing the requisite analysis for Article III standing.  Prior to *TransUnion*, it was widely considered established Eleventh Circuit Court of Appeals precedent that allegations of receiving multiple unwanted, non-emergency calls made using an automatic telephone dialing system or an artificial or prerecorded voice established concrete harm for purposes of Article III standing.  *See*, *e.g.*, *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1270 (11th Cir. 2019) ("The receipt of more than

---

[1] While not at issue in this motion, Badcock notes that under the Supreme Court's opinion in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 210 L. Ed. 2d 568 (2021), discussed in detail below, "[e]very class member must have Article III standing in order to recover individual damages." *Id.* at 2208.  Should Plaintiff's Amended Complaint survive dismissal and ultimately proceed to the class certification stage, this individualized inquiry into Article III standing for each putative class member will predominate over any issues the members as a whole may otherwise share in common, thus rendering class treatment improper under Fed. R. Civ. P. 23(b)(3).

2

one unwanted telemarketing call made in violation of the provisions enumerated in the TCPA is a concrete injury that meets the minimum requirements of Article III standing."); *Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301, 1305-06 (11th Cir. 2020) (relying on *Cordoba* to hold that plaintiffs who received "over a dozen unsolicited phone calls to their cell phones" established injury-in-fact); *Grigorian v. FCA US, LLC*, 838 Fed.Appx. 390, 393 (11th Cir. 2020) ("[T]he recipient of 'more than one unwanted telemarketing call' has suffered an injury under the TCPA.") (citations omitted).

*TransUnion*, however, changed the "concrete harm" analysis. The question is no longer dependent on the name of the statute or—with respect to the TCPA at issue in this case—the number of phone calls or text messages allegedly received (just one, or multiple), but now solely focuses on whether the plaintiff suffered a "distinct or palpable" injury, *id.* at 2200; one that is "real, and not abstract." *TransUnion,* 141 S. Ct. at 2204 (quoting *Spokeo*, 136 S.Ct. at 1556) (internal quotation marks omitted). In determining whether the concrete-harm requirement has been satisfied, "courts should assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *Id.* at 2204 (citation omitted). "That inquiry asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *Id.*

Less than one month ago, the Eleventh Circuit acknowledged this paradigm shift in its opinion in *Drazen v. Pinto*, --- F.4th ---, 2022 WL 2963470 (11th Cir.

3

July 27, 2022), wherein the court called into question its prior opinions in *Cordoba* and *Glasser* (cited above for the proposition that the receipt of multiple calls automatically constitutes concrete harm) because they "were decided pre-*TransUnion*, and under *TransUnion* plaintiffs have the burden of establishing Article III standing for statutory violations by alleging facts that would allow us to find a common-law analogue to the injury in question." *Id.* at *6 n. 14.

Based on the United States Supreme Court's ruling in *TransUnion*, which the Eleventh Circuit acknowledged in *Drazen* applies equally to TCPA cases, Badcock respectfully asserts that Plaintiff's Amended Complaint must be dismissed because it fails to allege that she (or any member of the putative class) suffered an injury in fact as a result of any conduct of Badcock that is concrete, particularized, and actual or imminent, such as would allow this Court to "find a common-law analogue" to support the existence of Article III standing.

Accordingly, Badcock respectfully requests that this Court dismiss Plaintiff's Amended Complaint for lack of standing.

## **PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiff filed her Amended Complaint on June 22, 2022. In it, she alleges that Badcock has placed prerecorded voice calls to her cellular telephone number since November 2021. Dkt. 16, ¶ 14. Plaintiff alleges that the purpose of the calls was to collect a debt that did not belong to her (*id.* at ¶ 15) and that she is not a Badcock customer or account holder (*id.* at ¶¶ 16-17), does not owe any money to Badcock (*id.* at ¶ 18), did not provide her cellular telephone number to Badcock

4

(*id.* at ¶ 20), and did not give prior express consent for Badcock to place calls to her cellular telephone number using an artificial or prerecorded voice (*id.* at ¶ 21). Plaintiff contends that the alleged calls from Badcock constituted a violation of the TCPA and requests that this Court certify a class comprised of individuals whom she states are similarly situated to her. *Id.* at ¶ 33.

Plaintiff's Amended Complaint does not allege or seek to recover any actual damages. Rather, Plaintiff requests only statutory damages under the TCPA for herself and each member of the putative class. Dkt. 16, pp. 9-10. The purported harm suffered by the Plaintiff and putative class members from the calls alleged to have been made by Badcock is mentioned in only two paragraphs of the Amended Complaint:

> Defendant's unsolicited calls caused Plaintiff harm, including invasion of privacy, aggravation and annoyance. Defendant's call also inconvenienced Plaintiff and caused disruption to her daily life, and violated Plaintiff's substantive rights under the TCPA.

Dkt. 1, ¶ 32.

> As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation.

*Id.* at ¶ 51. Neither paragraph asserts any economic or distinct injury, or any injury similar to an injury cognizable at common law, and nowhere in the Amended Complaint does Plaintiff even attempt to establish a causal connection between the calls she alleges to have received and the harm she claims she and the putative class

5

members have suffered. The Amended Complaint does not describe any injury Plaintiff suffered that is "real, and not abstract" as required by *TransUnion*.[2]

## MEMORANDUM OF LAW

### A.  Applicable Legal Standard

Article III limits the jurisdiction of federal courts to actual cases and controversies. *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1124 (11th Cir. 2019). The standing doctrine "is rooted in the traditional understanding of a case or controversy" under Article III and implicates subject-matter jurisdiction. *Id.* (citations omitted). "[A] motion to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) can be based upon either a facial or factual challenge to the complaint." *McElmurry v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007); *see also Carmichael v. Kellogg, Brown & Root Services*, Inc., 572 F.3d 1271, 1279 (11th Cir. 2009).

"A plaintiff bears the burden of establishing she has standing." *Grigorian*, 838 Fed.Appx. at 392 (citing *City of Miami Gardens v. Wells Fargo & Co.*, 956 F.3d 1319, 1320 (11th Cir. 2020) (William Pryor, J., respecting the denial of rehearing en banc)). Standing is a threshold issue and a class plaintiff must have cognizable injury in order to meet the initial burden of establishing individual

---

[2] Badcock filed a Motion to Dismiss (Dkt. 13) directed at Plaintiff's original Class Action Complaint (Dkt. 1) which was denied by the Court as moot after Plaintiff filed her Amended Complaint (Dkt. 17). The Amended Complaint corrects some grammatical errors and provides dates and times of calls Plaintiff alleges to have been made by Badcock (presumably to firm up the position that she received multiple calls, which allegation Badcock already acknowledged in its first Motion to Dismiss (*see* Dkt. 13, p. 1)), but it does not add any new factual allegations relating to the injury she claims to have suffered and, thus, does not change the analysis Badcock is asking the Court to perform under *TransUnion*.

standing. *Griffin v. Dugger*, 823 F.2d 1476 (11th Cir. 1987). At the pleading stage, a plaintiff's general factual allegations must "'plausibly and clearly allege a concrete injury.'" *Muransky v. Godiva Chocolatier Inc*, 979 F.3d 917, 924 (11th Cir. 2020).

To establish Article III standing, a plaintiff must show "(i) that [s]he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion*, 141 S. Ct. at 2203 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). "The injury-in-fact element is the 'first and foremost' of the Article III requirements." *Grigorian*, 838 Fed.Appx. at 392. "[A]lleging a statutory violation is not enough to show injury in fact." *Muransky,* 979 F. 3d at 924. In order to determine whether an injury is sufficiently "concrete" under *TransUnion*, federal courts must examine "whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *TransUnion*, 141 S. Ct. at 2204.

The Supreme Court "has rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* at 2205 (citation omitted). "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo*, 136 S.Ct. at 1543. It is now indelibly established that "Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to

7

independently decide whether a plaintiff has suffered a concrete harm under Article III...." *TransUnion*, 141 S. Ct. at 2205.

### B. Plaintiff Alleges No Facts to Support a Concrete Injury and, thus, Lacks Article III Standing

As was the case in *TransUnion*, the "question in this case focuses on the Article III requirement that the plaintiff's injury in fact be 'concrete'—that is, 'real, and not abstract.'" *TransUnion*, 141 S. Ct. at 2204 (citations omitted). Here, the facts alleged in Plaintiff's Amended Complaint do not support a concrete injury, but rather suggest only intangible harm of the type that has not traditionally been found to create Article III standing.

In *Southam v. Red Wing Shoe Company, Inc.*, Florida's Fourth District Court of Appeal recently did a deep dive into federal standing law in the wake of *TransUnion*. --- So.3d ---, 2022 WL 2709479 (Fla. 4th DCA July 13, 2022). In affirming the lower court's order granting a motion to dismiss, the appellate court found that the plaintiff "suffered no 'economic' injury, nor any 'distinct or palpable' injury," and therefore lacked Article III standing to assert claims on behalf of himself and a purported class of similarly situated individuals under the Fair and Accurate Credit Transactions Act, 15 U.S.C. § 1681 ("FACTA"). The claim in that case was based on Red Wing having included ten digits of the plaintiff's credit card number on a receipt in violation of the statute. Similar to Plaintiff's Amended Complaint in this case, the complaint in *Southam* did not allege or seek to recover any actual damages" and "sought only statutory damages...." *Id.* at *1.

8

In reaching its conclusion that the plaintiff lacked Article III standing, the *Southam* court relied on the Supreme Court's rejection of "the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right'" as well as its requirement of "a concrete injury even in the context of a statutory violation." *Id.* at *5 (citing *TransUnion*, 141 S. Ct. at 2205) (quoting *Spokeo*, 136 S.Ct. at 1543)). The court found that based on the facts alleged in that case, as in *Spokeo* and *TransUnion*, the plaintiff lacked Article III standing even in the context of a statutory violation because he did not allege that he suffered a concrete, individualized harm as a result of the credit card numbers being printed on his receipt. *Id.*

The Eleventh Circuit's recent opinion in *Drazen v. Pinto*, a TCPA case, is also instructive. In *Drazen*, the plaintiff filed a complaint against GoDaddy.com, LLC ("GoDaddy") alleging it violated the TCPA using a prohibited telephone dialing system to call and send her marketing texts. 2022 WL 2963470 at *1. Her case was consolidated with a similar one pending in United States District Court in Arizona, and the plaintiffs in the combined case purported to bring a class action on behalf of similarly situated individuals. *Id.* A class settlement was reached, to which a class member named Juan Pinto objected. *Id.* at *3. The district court made some amendments to the settlement structure after Pinto's objection, but ultimately approved the settlement; and Pinto appealed. *Id.*

9

On appeal, the Eleventh Circuit reversed the trial court's approval order, finding that "the class definition d[id] not meet Article III standing requirements" because it included individuals who received only a single text or phone call from GoDaddy. *Id.* at \*4; 6. The court noted that while there is existing Eleventh Circuit precedent holding that a single text message is not concrete injury sufficient to create the damage required for Article III standing, *see Salcedo v. Hanna*, 936 F.3d 1162 (11th Cir. 2019), the question remains unanswered whether the recipient of a single phone call would have Article III standing. *Id.* Because the parties had not briefed the single call issue, the court thought it best to remand with an opportunity for the plaintiffs "to redefine the class with the benefit of *TransUnion* and its common-law analogue analysis." *Id.* at \*7.

To that end, the *Drazen* court in a footnote, citing to its prior opinion in *Cordoba* as "our current case law," noted that the named plaintiffs' allegations of having received multiple calls to their cellular telephones was "sufficiently similar to the tort of intrusion upon seclusion to meet the minimum requirements of Article III standing under our current case law." *Id.* at \*6 n. 13. Importantly, however, the Eleventh Circuit directly followed that statement with a "*but see infra* n.14" directing readers to the next footnote, in which it proceeded to call its prior Article III standing analysis in both *Cordoba* and *Glasser* into question in light of the Supreme Court's holding in *TransUnion*. *Id.* The content of footnote 14 warrants duplication in its entirety:

> As a side note, we have been less than a model of clarity in *Cordoba* and *Glasser* for purposes of Article III standing analysis. *Cordoba* involved an FCC regulation promulgated pursuant to the TCPA that "requir[ed] telemarketers to maintain lists of individuals who have asked not to receive calls from particular callers – so-called 'internal do-not-call lists.'" *Cordoba*, 942 F.3d at 1264. And the only plaintiffs in the class action in that case who had standing were those who received telemarketing calls after they had asked not to be called. *Id.* at 1272. *Glasser*, which dealt with the same statute as the one in our case, involved two individuals who alleged that they had received calls from automatic dialing systems in violation of the TCPA. *Glasser*, 948 F.3d at 1305-06. There, we said that because *Cordoba* had held that "more than one unwanted telemarketing call" was sufficient to confer standing, the plaintiffs in *Glasser* had standing. *Id.* at 1306.
>
> We have a problem here. "Unwanted" in *Cordoba* had a specific meaning—individuals who were called after asking not to be called. "Unwanted" in the context of the statute at issue in our case and in *Glasser* refers to the fact that individuals, though never asking not to be called, were called by allegedly prohibited means under the TCPA—automatic telephone dialing systems. So, to us, the standing analysis in *Cordoba* and the standing analysis in *Glasser* and our case may not necessarily be the same. In *Cordoba*, people asked not to be called—period. In *Glasser* and in our case, the individuals are not complaining about the fact they were called. They are complaining about the fact that the automatic telephone dialing system did the calling. In other words, the injury is not the call but rather the dialing system used, and it is not clear that GoDaddy's compliance with the statute would have prevented the plaintiffs from being called. The difference between *Cordoba* and *Glasser* and our case may present the need to reexamine *Glasser* in the future because it may affect both the injury-in-fact requirement and the causation analysis.
>
> At the very least, *Cordoba* and *Glasser* were decided pre-*TransUnion*, and under *TransUnion* plaintiffs have the burden of establishing Article III standing for statutory violations by alleging facts that would allow us to find a common-law analogue to the injury in question. *See TransUnion*, 141 S. Ct. at 2204. *Glasser* conducted no historical analysis and is suspect on that ground alone.

*Id.* at *6 n. 14.

In the present case, Plaintiff's alleged injury is more like that alleged in *Glasser* and *Drazen* than in *Cordoba*. Plaintiff has made no allegation that she ever asked Badcock not to call her. *See generally*, Dkt. 16. Instead, like in *Glasser*, she merely alleges that despite never consenting to be called, she received calls in violation of the statute. *Id.* As the Eleventh Circuit explained in *Drazen*, this means Plaintiff's alleged injury is not the call itself, but rather the means or method for transmitting the call (here, the alleged use of a prerecorded voice). Thus, like in *Drazen*—and taking Plaintiff's allegations as true solely for purposes of this motion—it is entirely unclear (and, in fact, doubtful) whether Badcock's compliance with the statute would have prevented Plaintiff from receiving calls.

Leading into its ultimate holding, the *Drazen* court identified as a key takeaway from the Supreme Court's opinion in *TransUnion* that "a plaintiff alleging a statutory violation must demonstrate that history and the judgment of Congress support a conclusion that there is Article III standing." *Id.* at *5. As such, *TransUnion* and its progeny emphasize a basic guidepost for this Court's standing analysis: Plaintiff does not automatically have standing simply because Congress authorized her to sue Badcock for an alleged failure to comply with the TCPA. *See, e.g., Spokeo*, 136 S. Ct. at 1549. Plaintiff must show either that the procedural harm itself is a concrete injury of the sort traditionally recognized or that the procedural violations caused an independent concrete injury.

Plaintiff's allegations in the Amended Complaint fall woefully short of demonstrating that the alleged procedural violations attributed to Badcock caused

12

Plaintiff to suffer an independent concrete injury.³ As such, to establish Article III standing, the alleged violations themselves must constitute concrete injury—meaning that Plaintiff has to have alleged sufficient facts to demonstrate that the harm she contends resulted from the receipt of multiple prerecorded calls from Badcock—namely annoyance, aggravation, inconvenience in daily life, and invasion of privacy (Dkt. 16, ¶ 32)—resembles a harm traditionally regarded as providing a basis for a lawsuit. *TransUnion*, 141 S. Ct. at 2204.

Eleventh Circuit precedent contains no support for the proposition that annoyance, aggravation, or inconvenience constitute concrete injury for purposes of Article III standing. Accordingly, the only potentially viable injury alleged by Plaintiff (aside from the statutory violation itself, which does not suffice) is the intangible harm of invasion of privacy. See Dkt. 16, ¶ 32.

In *Salcedo v. Hanna*, the Eleventh Circuit examined whether the intangible harm of invasion of privacy "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." 936 F.3d at 1172. That case involved the plaintiff's alleged receipt of a single marketing text message to his cellular telephone, and the court ultimately concluded that "[s]imply sending one text message to a private cell phone is not closely related to the severe kinds of actively intermeddling intrusions

---

³ It bears pointing out that the existence of an independent concrete injury that is specific to Plaintiff would render class certification essentially impossible under Fed. R. Civ. P. 23(b)(3).

13

that the traditional tort contemplates." *Id.* In its analysis, the Eleventh Circuit discussed some Congressional history regarding privacy in relation to the TCPA:

> We consider the judgment of Congress when assessing standing because "Congress is well positioned to identify intangible harms that meet minimum Article III requirements." *Id.* As we have mentioned, Congress was concerned about "intrusive invasion[s] of privacy" into the home when it enacted the TCPA. Pub. L. No. 102-243, § 2, ¶ 5. Salcedo argues that the particular privacy interest Congress has identified is "the freedom from unwanted robocalls," but that observation is too general. As we have noted, a single unwelcome text message will not always involve an intrusion into the privacy of the home in the same way that a voice call to a residential line necessarily does. Certainly, Salcedo has not alleged that he was in his home when he received Hanna's message. As we have also noted, the 1992 amendment allowing the FCC to exempt free-to-receive calls to cell phones, 47 U.S.C. § 227(b)(2)(C), suggests less congressional concern about calls to cell phones. And by nature of their portability and their ability to be silenced, cell phone calls may involve less of an intrusion than calls to a home phone. We realize that Congress in 1991 could not have foreseen the explosion in personal cell phone use, the popularity of text messaging, and the near-extinction of the residential telephone line. But *Spokeo* instructs us to consider the judgment of Congress about the alleged harm, not to imagine what Congress might say about a harm it has not actually addressed.

*Id.* at 1170. The court next looked at the history of the "generally accepted tort of intrusion upon seclusion," which it explained "creates liability for invasions of privacy that would be 'highly offensive to a reasonable person.'" *Id.* at 1171. Finding that Salcedo's allegations fell short of this degree of harm, the court noted that the tort of intrusion upon seclusion requires an intrusion "upon the solitude or seclusion of another or his private affairs or concerns," citing examples such as "eavesdropping, wiretapping, and looking through one's personal documents" to

which it found the harm alleged by Salcedo from receiving a text message was not equivalent. *Id.* (citation omitted).

Explaining its holding that "history and the judgment of Congress do not support finding concrete injury in Salcedo's allegations," the court reasoned that his complaint did not allege "anything like enjoying dinner at home with his family and having the domestic peace shattered by the ringing of the telephone" or "that his cell phone was searched, dispossessed, or seized for any length of time." *Id.* "Salcedo's allegations of a brief, inconsequential annoyance are categorically distinct from those kinds of real but intangible harms." *Id.*

Three months after *Salcedo*, the Eleventh Circuit issued *Cordoba* and, in that opinion, found that invasion of privacy from the receipt of unwanted phone calls constituted an injury in fact. 942 F.3d at 1270. In distinguishing its holding from that in *Salcedo*, the court explained that the focus in *Salcedo* was "the unique features of text messages." *Id.* The court explained:

> As we recognized in *Salcedo*, a phone call intrudes upon the seclusion of the home, fully occupies the recipient's device for a period of time, and demands the recipient's immediate attention. While those injuries might not be significant in the grand scheme of things, they are sufficiently concrete and particularized for Article III standing. This is enough to establish the injury in fact prong of standing for *Cordoba* and all of the absent class members who received calls from Telecel.

*Id.* The court cited to legislative history in arriving at its holding that that more than one call made in violation of the TCPA establishes concrete injury:

> And we know that Congress focused on precisely this kind of harm when it passed the TCPA, finding that "[m]any consumers [were]

15

> outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers." Pub. L. No. 102–243, § 2, 105 Stat. 2394, 2394. Congress identified telemarketing as a potentially "intrusive invasion of privacy," suggesting to us that Congress considered the receipt of an unwanted telemarketing call to be a real injury.

*Id.* at 1270. Further discussing the claimed harm of invasion of privacy, the court went on to quote with approval an opinion from the Third Circuit Court of Appeals which reached a similar holding: "'Congress squarely identified this injury' in the TCPA and that this harm bore a close relationship to the kind of harm that would have given rise to the common law cause of action of 'intrusion upon seclusion.'" *Id.* (quoting *Susinno v. Work Out World Inc.*, 862 F.3d 346, 351-52 (3d Cir. 2017)).

So where does this leave us? In a telling footnote, the Eleventh Circuit in *Salcedo* stated the following with respect to the viability of invasion of privacy as a concrete injury for Article III standing purposes in the cell phone age: "As we have discussed, both the judgment of Congress and history here reveal concerns about intrusions into the privacy of the home and interferences with property that do not readily transfer to the context of cell phones." 936 F.3d at 1172 n.11. Though that same court later found concrete harm from the receipt of phone calls in *Cordoba*, it most recently (post-*TransUnion*) went back to the *Salcedo* footnote language in *Drazen,* 2022 WL 2963470 at *6, the case in which it suggested that *Cordoba* and *Glasser* be reexamined in light of *TransUnion*'s requirement that plaintiffs allege

16

facts that would allow the court to find a common-law analogue to the injury in question. *Id.* at n. 14.[4]

Taking the cases together, it appears the Eleventh Circuit has recognized that the reasoning behind its existing precedent (*Cordoba* and *Glasser*) is now at odds with the standard set forth by the Supreme Court in *TransUnion*, and that very distinction is central to the analysis here. In short, Plaintiff must allege actual, cognizable harm to meet the concrete injury requirement. Here, Plaintiff's Amended Complaint alleges only statutory damage, which is clearly not sufficient to state a claim under *TransUnion* and its progeny, which now includes the Eleventh Circuit's decision in *Drazen*.

## CONCLUSION

The Amended Complaint filed by Plaintiff in this action does not meet the standard imposed by the Supreme Court in *TransUnion*. It is completely devoid of any facts that would allow this Court to find a common-law analogue to the injury she purports to have suffered as the result of allegedly receiving multiple prerecorded calls from Badcock for which she did not give express consent (the same "injury" she contends was suffered by all putative class members). Plaintiff does not allege that she was enjoying dinner at home with family and had her

---

[4] In a case brought under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.*, the Seventh Circuit Court of Appeals—in a post *TransUnion* opinion citing to the new Supreme Court precedent—specifically held that a list of allegations including being "annoyed" or "intimidated" and experiencing "infuriation or disgust," "a sense of indignation," or a "state of confusion," "without any ensuing detriment," was not concrete injury because if it were, "then everyone would have standing to litigate about everything." *Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 668 (7th Cir. 2021) (citation omitted). These are the same non-harms alleged to have been suffered by Plaintiff here.

17

domestic peace shattered by Badcock's calls, that her cellphone was searched, disposed of, seized, or even occupied for any amount of time, or that the calls intruded upon the solitude or seclusion of her home. Conversely, she merely alleges in conclusory fashion—without any factual support—that she (and all of the putative class members she seeks to represent) suffered annoyance, aggravation, inconvenience in daily life, and invasion of privacy. *See* Dkt. 16, ¶ 32. In short, Plaintiff alleged a series of buzz words, not concrete injury.

In *TransUnion*, the Supreme Court made it clear that "Article III standing requires a concrete injury even in the context of a statutory violation." *TransUnion*, 141 S. Ct. at 2205 (quoting *Spokeo*, 136 S.Ct. at 1543). Because Plaintiff's Amended Complaint alleges only a bare procedural violation of the TCPA without supporting facts to demonstrate that she suffered an injury in fact that is "concrete, particularized, and actual or imminent," *id.* at 2203, she lacks Article III standing to maintain her TCPA claim and this Court lacks subject-matter jurisdiction over it.

WHEREFORE, Badcock respectfully requests that this Court enter an order dismissing Plaintiff's First Amended Class Action Complaint (Dkt. 16) for lack of Article III standing, and granting such additional relief as the Court deems proper.

***[signatures on following page]***

Dated: August 26, 2022.

        Respectfully submitted,

        */s/ John E. Johnson*
        JOHN E. JOHNSON
        Florida Bar No. 593000
        jjohnson@jclaw.com
        CHRISTOPHER L. DECORT
        Florida Bar No. 89009
        cdecort@jclaw.com
        Bradley F. Kinni
        Florida Bar No. 1025847
        bkinni@jclaw.com
        **JOHNSON, CASSIDY, NEWLON & DECORT, P.A.**
        2802 N. Howard Avenue
        Tampa, Florida 33607
        Telephone: (813) 699-4859
        Facsimile:  (813) 235-0462
        *Attorneys for W.S. Badcock Corporation*

## LOCAL RULE 3.01(g) CERTIFICATE

I HEREBY CERTIFY that I conferred with counsel for Plaintiff in a good faith effort to resolve the issues raised herein via email on August 26, 2022, however, an agreement on resolution of the motion could not be reached.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 26, 2022, a true and correct copy of the foregoing was electronically filed with the United States District Court, Middle District of Florida, by using the CM/ECF System, which will serve a copy on all counsel of record.

        */s/ John E. Johnson*
        Attorney